IN THE CIRCUIT COURT OF THE 11th JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA

CIRCUIT CIVIL DIVISION

CASE NO. _____

PHILADELPHIA HOLDINGS GROUP, LLC,

    Plaintiff,

vs.

CROWE DUNLEVY, P.C. and
CHRISTOPHER M. STAINE, Individually,

    Defendants.
_____/

# COMPLAINT

Plaintiff, PHILIDELPHIA HOLDINGS GROUP, LLC ("PHG"), by and through its undersigned counsel, files this its Complaint against, CROWE DUNLEVY, a Professional Corporation ("Crowe"); and CHRISTOPHER M. STAINE individually ("Staine"), and in support thereof alleges as follows:

## INTRODUCTION

This is a case about an attorney, Staine, who played both sides of several transactions wherein conflicts of interest arose and were such that the clients should have been notified that unbiased, fair, and equitable representation of both parties and their completing interests was no longer possible. Because of Crowe and Staine's dual representation of multiple interested parties to the transactions and biased toward one client's interests over PHG's interests, injustice arose and at least $230,000 of loss related to real property transactions was incurred. Despite efforts for

**EXHIBIT B**

resolution prior to this suit, PHG has been forced to hire counsel and pursue this matter in the courts, incurring the legal costs and fees associated herewith.

## JURISDICTION AND VENUE

1. This is an action for damages in excess of $30,000, excluding attorney's fees, interest, and related costs.

2. Jurisdiction is vested in this Court pursuant to Fla. Stat. § 48.193(1)(b).

3. Venue is properly laid in Miami-Dade County, Florida, pursuant to Fla. Stat. §§ 47.011, 47.021 and/or 47.051 because one or more of the causes of action alleged hereunder accrued in Miami-Dade County, because one or more of the parties resides in, or has or usually keeps, an office for transaction of its customary business in Miami-Dade County, and because the Plaintiff has an agent or other representative where the cause of action accrued, or where the property in litigation is located.

4. The matter is appropriately assigned to the Complex Business Litigation (CBL) Division of the Eleventh Judicial Circuit, pursuant to Rule 1.201(a) of the Florida Rules of Civil Procedure and Section 2(A) of Amended Administrative Order No. 16-12, insofar as it involves substantial damages and complex legal and case management issues requiring extensive judicial management to expedite the action, contain costs and promote judicial efficiency.

## THE PARTIES

5. Plaintiff, Philadelphia Holdings Group, LLC is a Wyoming limited liability company who's only authorized agents are individual residents of Miami-Dade County, Florida and who conduct all business on behalf of PHG in and from Miami-Dade County, Florida.

6. Defendant, Crowe Dunlevy, P.C., is an Oklahoma Professional Corporation with its principal place of business at 324 N. Robinson Avenue, Suite 100, Oklahoma City, OK 73102,

which was registered as a foreign profit corporation with the State of Florida and which has repeatedly become inactive due to revocation of its registered agents in the State.

7.  Defendant, Christopher M. Staine, is an individual licensed attorney in Oklahoma and Texas who is employed by Crowe Dunlevy, P.C. in its Dallas, Texas office located at 2525 McKinnon St., Ste 425, Dallas, TX 75201, and is the individual attorney that represented PHG in the transactions at issue herein.

8.  All conditions necessary to the bringing of this action have been performed, occurred, or have been waived.

9.  Plaintiff has agreed to pay the undersigned law firm reasonable attorney's fees.

## GENERAL ALLEGATIONS

### A. RELATIONSHIP OF THE DEFENDANTS WITH EACH OTHER AND PLAINTIFF

10. Crowe is an interstate law firm that conducts business regularly in both Oklahoma and Texas, with multiple offices and multiple attorneys assisting individual and business clients located throughout the United States.

11. Staine is an individual attorney licensed to practice law in both Oklahoma and Texas, who is employed by Crowe and is a director in Crowe's Dallas, Texas office. Pursuant to his employment with Crowe, Staine undertook representation of PHG in the Huitt-Zollars lawsuit as a creditor, as well as several transactions involving real estate purchase, sale, investments, and construction disputes.

### B. THE PROPERTY, COMPANIES, AND AGREEMENTS

12. In litigation between Scott Myrick ("Myrick") and Andrew "Jack" Sordoni ("Sordoni") over their interest in Sooner Minerals Investment, Sordoni was awarded $2.2 million in a settlement reached on November 21, 2017, which was later amended on December 12, 2018.

13. As part of the settlement between Myrick and Sordoni, Myrick was to pay Sordoni the $2.2 million by April 20, 2019, which debt was secured by a mortgage on a property located in Canadian County, Oklahoma (the "Property").

14. The Property is the location where a waterpark was to be built and owned by Butte Land Investments, LLC ("Butte") and others.

15. On or about April 1, 2019, Oklahoma Destination Development, LLC ("ODD") was formed to develop an indoor entertainment park on 20 acres in Yukon, Oklahoma to be known as Thunder Falls. ODD's members were Myrick and Philip Cove.

16. On April 20, 2019, Myrick's debt to Sordoni became due and owing but had not been paid.

17. On April 29, 2019, Huitt-Zollars filed suit against Butte and Myrick due to its holding of a materialman's lien on the Property which was properly perfected on May 3, 2018.

18. On July 24, 2019, Sordoni assigned his right, title, and interest in the Mortgage dated December 12, 2018, as well as the remaining Settlement Proceeds due under his Settlement Agreement with Myrick subject to the Huitt-Zollars Foreclosure litigation to PHG in exchange for $350,000.

19. Sordoni was represented by Crowe and Staine during this transaction between Sordoni and PHG, Sordoni is also a resident of the State of Florida who was residing in and conducting business out of Florida during the duration of occurrences discussed herein.

20. Pursuant to the assignment, Sordoni was required to pursue the foreclosure litigation and retained the right to repurchase the Mortgage until January 5, 2021.

21. Sordoni unconditionally guaranteed to PHG its receipt of $1,726,526.85 from the proceeds of the Foreclosure litigation if Sordoni failed to exercise his repurchase rights before January 5, 2021.

22. On December 9, 2019, Staine and Crowe were substituted as counsel for Sordoni in the Huitt-Zollar foreclosure litigation, where Sordoni's counsel was previously Jared Boyer.

23. On or about January 13, 2020, Oairo Alliance Ltd ("Oairo") agreed to provide ODD with funding of up to $130,000,000 for the construction for partial equity and a senior debt on the Thunder Falls project. More specifically, Oairo's financing terms secured on June 1, 2020, were for a 30 month construction loan of up to $115,000,000 at 5.5% interest, which secured Oairo a senior loan and first priority security interest in all project revenues and assets.

24. On or about February 28, 2020, Greenworks Lending Construction Financing provided a loan proposal to ODD for up to $28,000,000, in financing.

25. On March 30, 2020, PHG engaged Crowe and Staine for representation in the Huitt-Zollars foreclosure litigation, wherein PHG and Sordoni had aligning interests.

26. On September 18, 2020, Butte and ODD sold land consisting of 111 acres and a 25% interest in ODD for $25 million payable in increments by Martin Advisory Group, though no deed has been recorded in the Canadian County Property Records.

27. On or about November 4, 2020, Diamond Sustainable Development Fund purchased an ownership interest in Oairo and provided $115 million in funding for Thunder Falls.

28. On or about August 13, 2020 and November 16, 2020, Warranty Deeds to Gamma Resources, LLC ("Gamma") were filed in the Property Records of Canadian County. Gamma's ownership is unclear but C. Brodie Hyde is listed as a Manager.

29. By January 5, 2021, Sordoni had failed to repurchase the mortgage held by PHG, but Crowe Dunlevy convinced PHG to extend the repurchase period until January 28, 2021.

30. On January 18, 2021, and unexecuted assignment of 50 (out of 1000) units of membership interest in Thunder Falls Resort, LLC were transferred from Myrick to Gamma.

31. On or about January 21, 2021, the following agreement with Sordoni was suggested by Myrick:

   a. C. Brodie Hyde, manager of Gamma, was to pay $880,000 cash for the benefit of Entertainment TC;

   b. The Sordoni/PHG mortgage was to be extinguished in full or partially assigned in the amount of $880,000 and the remainder extinguished;

   c. The $880,000 would be credited to Myrick's settlement agreement with Sordoni, but Myrick remained obligated to pay the remaining balanced owed under the settlement agreement by a certain date;

   d. Myrick would transfer to Sordoni a 2% equity interest in Thunder Falls Resort, LLC to Sordoni, subject to a mandatory buy back at Sordoni's option for $750,000.

32. At Jared Boyer's (Sordoni's previous counsel) suggestion, Myrick contacted escrow agent Patrick Hopple regarding the ownership pledge.

33. Myrick then also agreed to pay $100,000 of Sordoni's debt to PHG within six months, with $10,000 cash to PHG at closing, which agreement was collateralized by the liquidation valuation of Thunder Falls Resort, LLC as needed.

34. On or about January 27, 2021, PHG and Sordoni conveyed to Entertainment TC the right, title and interest in a portion of the Proceeds and Mortgage on the Property as follows:

   a. Entertainment TC acquired the rights to $880,000 of the proceeds together with all accrued interest on that portion of the proceeds, the mortgage which continued to secure the indebtedness but which was reduced to $880,000, and the right to enforce the mortgage interest in the foreclosure litigation.

    b. Sordoni retained the right to the remaining proceeds, amounting to approximately $846,526 plus all unpaid interest accrued on all of the proceeds from the date of accrual through the date of the January 27, 2021 agreement; all interest which accrued on the proceeds retained by Sordoni from that date forward; other rights under the settlement agreement; the right to pursue any other litigation involving Myrick, Butte, and any other companies owned in whole or in part by Myrick.

35. On January 28, 2021, an amendment to the January 27, 2021, Contract for Assignment of Proceeds was made which extended Sordoni's repurchase rights to January 28, 2021, obligated Sordoni to pay $650,000 cash to PHG, and obligated Myrick to pay $100,000 plus interest to PHG by no later than July 27, 2021. This amendment was secured by OCC and Thunder Falls Resort, LLC assets and membership interests.

36. On July 27, 2021, Myrick defaulted in his obligations to PHG, and a note which continues to gain 17% interest per annum since the time of default, but which cannot be collected because Myrick, ODD, and Thunder Falls Resort, LLC, are without assets.

37. On or about August 3, 2021, in an email from PHG's representative to Staine requesting to schedule a "few moments to go over the security documents," PHG further states it is having a difficult time finding any property or assets associated with Myrick and ODD and TFR, but notes that real property appears to have been transferred to other entities previously and voices suspicion that PHG has been defrauded by the entire transaction.

### C. STAINE CONTINUES REPRESENTATION DESPITE CONFLICT

37. On March 30, 2020, PHG hired Crowe and Staine for representation in the Huitt-Zollars foreclosure, because PHG's interests in the litigation were intertwined and aligned with those of Sordoni because of the 2019 Mortgage assignment and Sordoni's obligation to pursue

same, and Sordoni had hired and substituted Crowe and Staine as counsel in the litigation during the latter part of 2019.

38. As is discussed in detail above, negotiations, business deals and complex transactions between multiple parties were occurring during the pendency of the foreclosure litigation that revolved around the rights of the parties to the foreclosure litigation including PHG, Sordoni, and Myrick, among others.

39. Staine continued to work for PHG in transactions related to the Property outside of the Foreclosure proceeding itself, because the nature of the proceeding resulted in the negotiations and agreements discussed herein above.

40. During these transactions, Staine was in fact continuing his dual representation of PHG and Sordoni, while employed by Crowe. This dual representation, which was beneficial to PHG and Sordoni's aligned interests in the foreclosure litigation, was continued without notice of conflict to PHG despite the interests of PHG and Sordoni becoming so disparate as to prejudice PHG's interest in the negotiations. PHG's waiver of conflict in the foreclosure litigation, was strictly limited to the litigation, and Staine's future, follow-on, and continued representation of PHG in related transactions was not subject to the terms of said waiver as explicitly marked out and excluded in the engagement letter.

41. The conflict of interest arose in matters arising from but not directly related to the foreclosure litigation, to the benefit of Sordoni and detriment of PHG, yet PHG was never informed that Staine was unable to or should not have continued his representation of the parties due to their conflicting interests.

42. PHG was consistently advised to continue forward in the manner suggested by Staine and Crowe, which resulted in enormous economic losses of what should have been an unconditionally guaranteed $1,726,526.85.

### D. DUTY TO INFORM AND ARISING CONFLICT OF CLIENTS

43. On January 28, 2021, Crowe and Staine facilitated and helped negotiate a series of agreements between PHG, Sordoni, Myrick, and Entertainment TC ("Entertainment").

44. Under the terms of those agreements, PHG was induced to extend the expiration of Sordoni's right to repurchase and to sell its interest in the Mortgage and Assignment of Rents and Leases recorded in the real estate records of Canadian County, Oklahoma (the "Mortgage").

45. The total amount of proceeds unconditionally guaranteed to PHG pursuant to the Mortgage was $1,726,526.85.

46. However, PHG was induced to extend the repurchase period of Sordoni – who had failed to repurchase by the original deadline of January 5, 2021 – and lead by Crowe and Staine to believe that interests in ODD and TFR as well as cash payment and a worthless promissory note were of equivalent value to what was guaranteed to PHG.

47. PHG only agreed to receive a reduced cash payment from Sordoni of $650,000, because the $100,000 promissory note payable by Myrick and secured by a pledge of Myrick's interest in ODD and TFR were purported to be of some comparable value, yet due to Myrick's financial insufficiency and the fact that ODD and TFR had no assets, PHG was left with a loss of more than $1 million.

48. Crowe and Staine, who had or should have had information related to Myrick, ODD, and TFR's assets, did not disclose or intentionally hid information related to Myrick's financial struggles and ODD and TFR's lack of assets.

49. This omission or concealment benefitted Sordoni, who then saved $1,076,526.85 by only paying $650,000 to PHG instead of the full unconditionally guarantee proceed amount, and at no time during these transactions was PHG informed of the truth.

50. Crowe and Staine were under a duty to inform or disclose and failed to inform or disclose to PHG that it would likely be without recourse if it entered into the transaction with Myrick and Sordoni in January 2021. Myrick was "judgment proof" then, and still is today.

51. If not for Crowe and Staine's actions and omissions, PHG would have retained its rights as Mortgagee and held Sordoni to his unconditional guarantee of $1,726,526.85 in proceeds after he defaulted on his repurchase of the Mortgage on January 5, 2021.

52. If PHG had been informed of the true nature of Myrick's assets, it would not have agreed to reduce Sordoni's obligation to repay the full amount, to Sordoni's benefit and PHG's detriment. If PHG had properly been warned that interests of the parties conflicted to such an extent that PHG had become prejudiced by said representation, PHG would not have been induced into and damaged by these transactions.

### COUNT I – LEGAL MALPRACTICE BASED ON PROFESSIONAL NEGLIGENCE

53. Plaintiff repeats and reiterates the allegations stated above in this complaint as if set forth at length herein.

54. Defendants were employed by PHG for representation in the Huitt-Zollers foreclosure litigation and "services related to this matter."

55. Defendants each owed duties to PHG to exercise due care in providing legal services and in rendering legal services to PHG.

56. Defendants each breached said duties, and each such defendant was professionally negligent by failing to disclose the lack of security that was known to them at the time the 2021

mortgage repurchase deal was proposed, by failing to notify PHG that the conflict of interest between the parties was "materially limiting [their] ability to provide competent and diligent representation", and by otherwise failing to protect PHG's interests.

57. As a direct and proximate result of the negligence aforesaid, PHG has been damaged by the loss of moneys that were "secured" by the assets of Myrick, ODD, and TFR, by the loss of its unconditionally guaranteed proceeds from the Mortgage from Sordoni, and by other losses, and damages, together with the costs and expenses associated with this litigation.

## COUNT II – BREACH OF FIDUCIARY DUTY

58. PHG restates and realleges all preceding Paragraphs above as if fully set forth herein.

59. A fiduciary duty exists between Staine and PHG because, among other things, Staine was PHG's attorney in litigation related to the Huitt-Zollers foreclosure litigation and associated Mortgage granting rights therein. These fiduciary duties include, among other things, acting in good faith, with care, and loyalty to PHG.

60. Fiduciary duty, in fact, has been described as "something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." *Van Dusen v. Southeast First Nat. Bank*, 478 So. 2d 82, 92 (Fla. 3d DCA 1985).

61. Staine breached his fiduciary duty to PHG by, among other things, steering PHG away from demanding its unconditionally guaranteed proceeds money from Sordoni and toward a settlement wherein PHG took a nonviable promissory note and business interests from Myrick, yet knowing and concealing that Myrick was insolvent and that ODD and TFR had no assets, and otherwise giving advice to PHG for the benefit of Sordoni and to the detriment of PHG without

notice of conflict of interests or non-representation in the transaction. In short, Staine took advantage of Crowe and Staine's representation of PHG in accompanying matters of the litigation to benefit their other client.

62. Staine's breach of his fiduciary duty proximately caused PHG's damages.

63. As a direct and proximate result of Staine's breach of his fiduciary duty, PHG has been damaged by the loss of moneys that were "secured" by the assets of Myrick, ODD, and TFR, by the loss of its unconditionally guaranteed proceeds from the Mortgage from Sordoni, and by other losses, and damages, together with the costs and expenses associated with this litigation.

### COUNT V – FRAUDULENT MISREPRESENTATION

64. Plaintiff repeats and reiterates the allegations set forth in the preceding Paragraphs above as if they were re-alleged at length herein.

65. During the course of the attorney-client relationship, Defendants intentionally made false statements to PHG and its agents or omitted material facts regarding the details of their knowledge of Myrick's financial solvency and the assets of ODD and TFR, and further omitted material facts related to conflict of interest and diligent and competent representation of PHG and its interests in the aforementioned instances.

66. The representations and omissions described above were material and false or intentional. Defendants each knew they were false at the time the representations were made or intended to omit them when they should have been made. Defendants made the false representations or omitted material facts in order to induce PHG to extend Sordoni's repurchase deadline, sell the Mortgage back to Sordoni for a reduced cash amount, accept a promissory note and interests in ODD and TFR in lieu of demanding the unconditionally guaranteed proceeds from Sordoni.

67. PHG acted in reasonable reliance on the fraudulent misrepresentations or intentional material omissions of the Defendants and has been damaged by the loss of moneys that were "secured" by the assets of Myrick, ODD, and TFR, by the loss of its unconditionally guaranteed proceeds from the Mortgage from Sordoni, and by other losses, and damages, together with the costs and expenses associated with this litigation in excess of $1,726,526.85.

## COUNT VII – NEGLIGENT MISREPRESENTATION

68. Plaintiff repeats and reiterates the allegations set forth in preceding Paragraphs above, as if they were re-alleged at length herein, and provides this plea in the alternative.

69. During the course of the attorney-client relationship, Defendants negligently made false statements to PHG and its agents or omitted material facts regarding the details of its ability to competently represent PHG and its interests, regarding its knowledge of Myrick's solvency, and regarding assets or the lack of assets possessed by ODD and TFR.

70. PHG justifiably relied to its detriment on Defendants' negligent misrepresentations and omissions with respect to the worth and solvency of Myrick, ODD, and TFR. In the absence of Defendants' negligent misrepresentations and omissions, PHG would not have agreed to extend Sordoni's repurchase period, accepted a reduced cash settlement and a worthless promissory note and interests in companies of no value.

71. PHG has incurred damages as a direct and proximate result of the Defendants' misrepresentations and omissions.

## DEMAND FOR JURY TRIAL

Plaintiff, PHILADELPHIA HOLDINGS GROUP, LLC, hereby demands a jury trial on all issues so triable.

## ADDITIONAL DAMAGES

Plaintiff herein pleads for any additional damages, including punitive damages, that may be available or found by this Court to be justly due and owing based upon a proving and finding of Defendants' behaviors to be so egregious, malicious, malevolent, or otherwise reprehensible as to warrant said damages, in amounts later to be determined.

**WHEREFORE**, Plaintiff, Philadelphia Holdings Group, LLC respectfully requests that the Court enter judgment in its favor and against Defendants Crowe Dunlevy, P.C. and Christopher M. Staine for all compensatory, consequential, additional and special damages to be proven at trial, plus pre- and post-judgment interest, costs and litigation expenses, and such other and further relief as this Court deems just and proper.

Dated this 7th day of November, 2022.

Respectfully submitted,

**JEROME RAMSARAN, P.A.**
*Designated e-mail Address:*
info@ramsaranlawgroup.com
12550 Biscayne Blvd, Suite 800
North Miami, Florida 33181
Phone: (888) 423-9393
Fax: (866) 473-2260

By: */s/ Jerome Ramsaran*
   **JEROME RAMSARAN, ESQ.**
   Fla. Bar No.: 112703